UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-20103-CR-DMM

UNITED STATES OF AMERICA

vs.

BRETT THOMAS GRAHAM,

          Defendant.
_____/



COURT EXHIBIT
CASE NO. 25-CR-20103
EXHIBIT NO. A

## PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and BRETT THOMAS GRAHAM (hereinafter referred to as the "Defendant"), enter into the following Plea Agreement ("Agreement"):

1. The Defendant agrees to plead guilty to Count 1 of the indictment, which charges the defendant with Wire Fraud in violation of Title 18, United States Code, Section 1343.

2. This Office agrees to seek dismissal of Counts 2 through 8 of the indictment after sentencing.

3. The Defendant is aware that the sentence will be imposed by the Court after considering the advisory United States Sentencing Guidelines and Policy Statements (hereinafter "U.S.S.G." or "Sentencing Guidelines"). The Defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The Defendant is also aware that, under certain circumstances, the Court may depart from the advisory Sentencing Guidelines range that it has computed and may raise or lower that advisory

sentence under the Sentencing Guidelines. The Defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the Defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in Paragraph 1 and that the Defendant may not withdraw the plea solely as a result of the sentence imposed.

4. The Defendant also understands and acknowledges that the Court may impose a statutory maximum term of imprisonment of up to twenty (20) years, followed by a term of supervised release of up to three (3) years. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $250,000, may order forfeiture, and must order restitution. Pursuant to 18 U.S.C. § 3663A(c)(2), the Defendant agrees that an offense listed in 18 U.S.C. § 3663A(c)(1) gave rise to this Agreement and, if applicable, any victims of the conduct described in the Factual Proffer shall be entitled to restitution.

5. The Defendant further understands and acknowledges that, in addition to any sentence imposed under Paragraph 4 of this Agreement, a special assessment in the amount of $100 will be imposed on the Defendant. The Defendant agrees that any special assessment imposed shall be paid at the time of sentencing. If the Defendant is financially unable to pay the special assessment, the Defendant agrees to present evidence to the United States and the Court at the time of sentencing as to the reasons for the Defendant's failure to pay.

6. This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses

committed, whether charged or not, as well as concerning the Defendant and the Defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this Agreement, the United States further reserves the right to make any recommendation as to the quality and quantity of punishment.

7. The United States agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the Defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the Defendant's recognition and affirmative and timely acceptance of personal responsibility. If, at the time of sentencing, the Defendant's offense level is determined to be 16 or greater, the United States will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the Defendant has assisted authorities in the investigation or prosecution of the Defendant's own misconduct by timely notifying authorities of the Defendant's intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently. The United States further agrees to recommend that the Defendant be sentenced within the advisory guideline range as that range is determined by the Court. The United States, however, will not be required to make this motion or such a recommendation if the Defendant: (a) fails or refuses to make a full, accurate, and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; or (b) commits any misconduct after entering into this Agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

8. The Defendant is aware that the sentence has not yet been determined by the Court. The Defendant also is aware that any estimate of the probable sentencing range or sentence that

the Defendant may receive, whether that estimate comes from the Defendant's attorney, the United States, or the probation office, is a prediction, not a promise, and is not binding on the United States, the probation office, or the Court. The Defendant understands further that any recommendation that the United States makes to the Court as to sentencing, whether pursuant to this Agreement or otherwise, is not binding on the Court, and the Court may disregard the recommendation in its entirety. The Defendant understands and acknowledges, as previously acknowledged in Paragraph 3 above, that the Defendant may not withdraw the Defendant's plea based upon the Court's decision not to accept a sentencing recommendation made by the Defendant, the United States, or a recommendation made jointly by the Defendant and the United States.

9.  The Defendant agrees, in an individual and any other capacity, to forfeit to the United States, voluntarily and immediately, any right, title, and interest to any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Section 1343, pursuant to 18 U.S.C. § 981(a)(1)(C). In addition, the Defendant agrees to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p). The property subject to forfeiture includes, but is not limited to:

 a. a forfeiture money judgment in the sum of $ 8,427,000 in U.S. currency, which sum represents the value of proceeds derived from the commission of the offense of conviction;
 b. directly forfeitable property, including all items listed in Schedule A; and
 c. substitute property pursuant to 21 U.S.C. § 853(p).

10.  The Defendant also agrees to assist the United States in all proceedings, whether administrative or judicial, involving the forfeiture to the United States of directly forfeitable or

substitute assets. This assistance shall include: disclosing within 14 calendar days in a Financial Disclosure Statement provided by this Office the existence, nature and location of all assets in which the defendant has or had any direct or indirect financial interest or control, any assets involved in the offense of conviction, and those held by a spouse, nominee, or other third party; taking all steps necessary to locate assets, wherever located; agreeing to the entry of an order enjoining the transfer or encumbrance of assets; transferring assets to the United States by delivery to this Office any necessary and appropriate documentation to deliver good and marketable title to assets; liquidating assets, or completing any task which will result in a payment towards the forfeiture money judgment; and not contesting or impeding in any way with any criminal, civil or administrative forfeiture proceeding concerning the forfeiture.

      11.    The defendant further agrees that forfeiture is independent of any assessment, fine, cost, restitution, or penalty that may be imposed by the Court. The defendant further agrees to waive: any constitutional, legal, and equitable claim or defense to the forfeiture of assets in any judicial or administrative proceeding; any applicable time limits for administrative or judicial forfeiture proceedings; any claim or defense under the Excessive Fines Clause of the Eighth Amendment to the United States Constitution; the requirements of Fed. R. Crim. P. 32.2; and any appeal of the forfeiture. The defendant understands that this plea agreement shall serve as a withdrawal of any pending administrative forfeiture claim.

      12.    In the event the Defendant withdraws from this Agreement prior to or after pleading guilty to the charge identified in Paragraph 1, or should this Office, in its sole discretion, determine that the Defendant failed to fully comply with any of the terms of this Agreement, the United States will be released from its obligations under this Agreement, and the Defendant agrees and understands that: (a) the Defendant thereby waives any protection afforded by Section 1B1.8 of the Sentencing

Guidelines, Rule 11(f) of the Federal Rules of Criminal Procedure, and Rule 410 of the Federal Rules of Evidence, and that any statements made by the Defendant as part of plea discussions, any debriefings or interviews, or in this Agreement, including the Factual Proffer, whether made prior to or after the execution of this Agreement, will be admissible against the Defendant without any limitation in any civil or criminal proceeding brought by the United States; and (b) the Defendant stipulates to the admissibility and authenticity, in any case brought by the United States in any way related to this Agreement, of any documents provided by the Defendant or the Defendant's representatives to any state or federal agency and/or the United States.

13. This is the entire Agreement and understanding between the United States and the Defendant. There are no other agreements, promises, representations, or understandings.

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

Date: 5/13/2025

ELI S. RUBIN
ASSISTANT U.S. ATTORNEY

Date: 4/22/2025

ELIZABETH BLAIR
ASSISTANT FEDERAL PUBLIC DEFENDER
ATTORNEY FOR DEFENDANT

Date: 4/22/2025

BRETT THOMAS GRAHAM
DEFENDANT

| SCHEDULE A |||
|---|---|---|
| Serial Number (if any) | Purchased From | Item Description |
| 264043 | Bulgari | High jewelry necklace set in pink gold with Turquoise, 1 silver Coin (MACEDONIA – PHILIPPOS II – 359 – 336 B.C.), 6 cabochon cut Blue Sapphire (2.65 ct) and pave-set Diamonds (D – F IF – VVS 4.44 ct) |
| 264846 | Bulgari | High jewelry necklace in pink gold with 1 pear emerald (Zambia – 10.62 ct), 1 fancy cut pink tourmaline (8.67 ct), 1 fancy cut blue topaz (8.63 ct), 1 fancy cut purple garnet (7.86 ct), 1 fancy cut amethyst (7.52 ct), 1 fancy cut citrine quartz (7.48 ct), 30 buff top rubies (3.65 ct) and pave-set diamonds (D-F IF-VVS 6.01 ct) |
| 267490 | Bulgari | High Jewelry earrings in pink gold with 7 rubellite beads (20.41 ct), 7 mandarin garnet beads (29.83 ct), 10 round brilliant cut diamonds and pave-set diamonds (D-F IF-VVS 4.67 ct) |
| 266008 | Bulgari | High Jewelry ring in pink gold with mother of pearl elements, 1 oval mandarin garnet (16.85 ct), 32 step cut diamonds (F-G VVS-VS 3.57 ct), and pave-set diamonds (D-F IF-VVS 1.74 ct) |
| 268863 | Bulgari | High Jewelry ring in pink gold with 1 cushion rubellite (10.59 ct), 20 buff-top rubies (1.30 ct), 22 fancy shape diamonds (F-F VVS-VS 1.65 ct) and pave-set diamonds (D-F IF-VVS 1.85 ct) |
| 268601 | Bulgari | High Jewelry ring in white gold with 1 cushion tanzanite (12.83 ct), 32 fancy buff-top emeralds (0.70 ct) and pave-set diamonds (D-F IF-VVS 1.89 ct) |
| 271483 | Bulgari | High Jewelry earrings in pink gold with 1 round rubellite (2.09 ct), 1 round emerald (1.49 ct), 14 buff-top rubies (0.93 ct), 1 round amethyst (1.14 ct), 1 round topaz (2.53 ct) and pave-set diamonds (D-F IF-VVS 1.39 ct) |
| 270376 | Bulgari | High Jewelry necklace in pink gold with 1 oval cabochon purple quartz (37.06 ct), 1 oval cabochon rubellite (31.57 ct), 1 oval cabochon pink tourmaline (28.00 ct), and pave-set diamonds (D-F IF-VVS 3.29 ct) |
| 271976 | Bulgari | High Jewelry earrings in pink gold with 2 pear and round kunzite (12.8 ct), 2 pear and round morganite (10.29 ct), 2 pear paralba tourmalines (3.70 ct) and pave-set diamonds (D-F IF-VVS 1.71 ct) |
| 273631 | Bulgari | High Jewelry Tubogas bracelet in pink gold with 1 oval cabochon cut rubellite (31.20 ct), and pave-set diamonds (D-F IF-VVS 1.78 ct) |
| N/A | Von Gehr Luxury LLC dba Briony Raym | Jewelry (locket) |
| N/A | Von Gehr Luxury LLC dba Briony Raym | Jewelry (diamond ring) |
| N/A | Pomellato New York | Necklace - $25,000 down payment + $77,078 second payment |
| N/A | Kavi Gupta Gallery Chicago | Artwork (estimated purchase price $39,000+) |